UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                             :
SHERWYN TOPPIN MARKETING                                     :
CONSULTANTS, INC. d/b/a TEMPTATIONS                          :
TAVERN and EWART BURTON,                                     :
                                                             :
                              Plaintiffs,                    :
                                                             :       **MEMORANDUM & ORDER**
                       v.                                    :       11 CV 3951 (MKB)
                                                             :
EVAN GLUCK, GABRIEL TAUSSIG,                                 :
MOHAMMEND QUHSHI, MIKE JONES and                             :
THE CITY OF NEW YORK,                                        :
                                                             :
                              Defendants.                    :
                                                             :
-------------------------------------------------------------x

MARGO K. BRODIE, United States District Judge:

      Plaintiffs Sherwyn Toppin Marketing Consultants, Inc., d/b/a Temptations Tavern ("Sherwyn Toppin") and Ewart Burton filed the above-captioned action pursuant to 42 U.S.C. § 1983 and § 1985 against Defendants Evan Gluck, Gabriel Taussig, Mohammed Quhshi, the City of New York (collectively, the "City Defendants") and Mike Jones. Plaintiffs allege malicious prosecution, First Amendment retaliation, abuse of process and a *Monell* claim under § 1983, as well as a conspiracy claim under § 1985. The City Defendants moved for summary judgment on all claims, and Defendant Jones moved to dismiss all claims. The Court heard oral argument on July 27, 2012. For the reasons set forth below, the motion for summary judgment and motion to dismiss are granted in their entirety.

I. **Background**

      Plaintiff Sherwyn Toppin operates the Temptations Tavern in Brooklyn, New York. (City Def. 56.1 ¶¶ 1, 3.) Temptations Tavern opened in October 2004, and Plaintiff Ewart

Burton has served as the manager of Temptations Tavern since it opened. *Id.* at ¶ 5. On May 13, 2005, the City of New York commenced an action pursuant to the Nuisance Abatement Law to abate a public nuisance at Temptations Tavern. *Id.* at ¶ 29. The proceeding was resolved by stipulation, and Temptations Tavern agreed not to serve alcohol after 4:00 a.m. *Id.* at ¶ 31. On May 3, 2006, the City of New York commenced another nuisance abatement proceeding. *Id.* at ¶ 32. That proceeding was resolved by stipulation, and Temptations Tavern agreed that it would not serve alcohol after 4:00 a.m. and would not permit the consumption of alcohol after 4:30 a.m. *Id.* at ¶ 34. On October 9, 2007, the City of New York commenced another nuisance abatement proceeding, which was resolved by stipulation on February 6, 2008. *Id.* at ¶¶ 35–36. Temptations Tavern agreed that it would not violate any Alcoholic Beverage Control Law ("ABC Law") and that it would be subject to immediate closure based upon a violation of the terms of the stipulation. *Id.* at ¶ 36.

On April 3, 2008, Plaintiffs filed a Section 1983 action in this Court against the City of New York and several law enforcement individuals, alleging that their constitutional rights were violated as a result of the enforcement actions of the New York City Police Department ("NYPD") at Temptations Tavern (the "2008 federal lawsuit").[1] (City Def. 56.1 ¶ 15; Declaration of Nicholas Ciappetta ("Ciappetta Decl.") Ex. C.) Plaintiffs alleged, among other things, that the defendants in the 2008 federal lawsuit were violating their right to equal protection by targeting Black and Caribbean-owned establishments and subjecting them to a pattern of harassing activity. (City Def. 56.1 ¶ 8.) On August 13, 2008, the City of New York sought the immediate closure of Temptations Tavern based upon a violation of the ABC Law.

---

[1] *Sherwyn Toppin v. City of New York*, 08 Civ. 1340, is currently pending before Judge Korman.

*Id.* at ¶ 37.  In a December 3, 2008 Decision & Order, Justice Miller of the Supreme Court, Kings County found that Temptations Tavern had violated the terms of the February 6, 2008 stipulation and directed that Temptations Tavern be closed for 90 days.  (City Def. 56.1 ¶ 38; Ciappetta Decl. Ex. E at 55.)

The City Defendants claim that in August 2010, Defendant Quhshi, an agency attorney in the Civil Enforcement Unit ("CEU") of the NYPD's Legal Bureau, received a request from the Brooklyn South Vice Enforcement Division to commence a new abatement proceeding against Temptations Tavern.  (City Def. 56.1 ¶¶ 8–11, 39.)  Defendant Quhshi assigned Defendant Gluck, also an agency attorney in the CEU, to prepare legal documents to support the City's application to initiate a nuisance abatement proceeding against Temptations Tavern.  *Id.* at ¶ 41.  Defendant Gluck notarized 19 police affidavits, but none of the police officers signed in his presence.  (Pl. Opp'n 7.)  After Defendant Gluck prepared the City's application, Defendant Taussig, an Assistant Corporation Counsel for the New York City Law Department, reviewed the legal papers and verified the complaint.  *Id.* at ¶¶ 42–43.  The City filed a nuisance action against Temptations Tavern and the State Liquor Authority ("SLA") in Supreme Court, Kings County on March 17, 2011.  (City Def. 56.1 ¶ 44; Am. Compl. ¶ 10(c).)  The City also obtained a temporary restraining order ("TRO") *ex parte*, forcing Plaintiffs to cease operations on March 21, 2011.  (Am. Compl. ¶ 10(c).)  A hearing was held March 24, 2011 in Supreme Court, Kings County, and, after five days of testimony, Justice Velasquez issued an interim decision denying the City's request for a preliminary injunction and ordering that the TRO be lifted.  (Affirmation of Ambrose Wotorson ("Wotorson Aff.") Ex. 10 at 8.)  In his interim decision, Justice Velasquez attacked the quality of the evidence submitted by the City and the credibility of the police officer witnesses.  *Id.*

On March 17, 2011, the SLA served a Notice of Pleading against Plaintiffs. (Declaration of Jason Buskin ("Buskin Decl.") Ex. A.) The SLA suspended Temptation Tavern's liquor license the next day. (Buskin Decl. Ex. B.) On April 6, 2011, Justice Velasquez granted a temporary stay of the suspension of Temptation Tavern's liquor license, pending a final decision by the SLA. (Wotorson Aff. Ex. 14.) The SLA filed an amended pleading on May 13, 2011. (Buskin Decl. Ex. C.) The SLA held an administrative hearing and the administrative law judge ("ALJ") sustained multiple charges against Plaintiffs. (Wotorson Aff. Ex. 14.) Plaintiffs allege that their liquor license was revoked in November 2011 after they "refused to accede to a demand by the Chairman of the New York State Liquor Authority, acting in open concert with defendants herein, to withdraw all pending claims against defendants' employers and/or supervisory personnel, and to pay a $25,000 fine."[2] (Am. Compl. ¶ 10(bb).)

On June 15, 2011, Justice Velasquez issued a final decision, which denied the City's motion for injunctive relief and expressed concern regarding the decision to prosecute an entity without first spending more time investigating the alleged violations. (City Def. 56.1 ¶ 45; Wotorson Aff. Ex. 15.) The City filed an appeal of Justice Velasquez's decision.[3] (Wotorson Aff. Ex. 21.) The 2011 nuisance abatement proceeding has not been dismissed or discontinued and is currently pending in New York Supreme Court. (City Def. 56.1 ¶ 46.)

---

[2] Plaintiffs have not alleged any facts in the Amended Complaint that support their allegation that the Chairman of the SLA Board conspired with Defendants. Although Defendant Jones is an officer of the SLA, he is not a member of the SLA Board. (Def. Jones Summ. J. 1; Tr. 87–88.) Aside from their conclusory allegation, Plaintiffs have not alleged any facts that Defendant Jones was involved in any way in the SLA Board's determination to revoke Plaintiffs' liquor license in November 2011.

[3] No decision has been issued on the City's appeal, but counsel for the City Defendants informed the Court at oral argument that the City does not intend to pursue the appeal. (Tr. 43.)

## II. Discussion

### a. Standard of Review

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 320 (2d Cir. 2009)). A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson*, 631 F.3d at 63 (quoting *Iqbal*, 556 U.S. at 678). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). In deciding whether to dismiss a complaint under Rule 12(b)(6), a district court "is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference."[4] *Taylor v. Vt. Bd. of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002).

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant

---

[4] Here, the Amended Complaint specifically quotes the prior decisions of Justice Velasquez, (Am. Compl. ¶¶ 10(j), (n), (u)–(z)); Evan Gluck's deposition testimony in the 2008 federal lawsuit, *id.* at ¶¶ 10(k)–(l); and the 2011 SLA decision, *id.* at ¶ 10(s). Thus, the Court finds that the prior decisions of Justice Velasquez and the SLA and the deposition testimony of Evan Gluck may be considered in deciding Defendant Jones' motion to dismiss.

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011). The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

    b. **Absolute Immunity**

Defendants Gluck, Taussig and Quhshi are protected by absolute immunity. As the Supreme Court and the Second Circuit have repeatedly recognized, prosecutors performing duties related to their prosecutorial function are protected by absolute immunity. *See e.g.*, *Burns v. Reed*, 500 U.S. 478, 486 (1991) ("[P]rosecutors are absolutely immune from liability under § 1983 for their conduct in initiating a prosecution and in presenting the State's case." (internal citations and quotations omitted)); *Warney v. Monroe County*, 587 F.3d 113, 120–21 (2d Cir. 2009). "The rationale for conferring absolute immunity in such circumstances is that '[t]he public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages.'" *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 424–25 (1976)). Such immunity extends to government attorneys who initiate civil

6

suits or administrative proceedings.  *Cornejo v. Bell*, 592 F.3d 121, 127–28 (2d Cir. 2010); *Spear v. Town of W. Hartford*, 954 F.2d 63, 66 (2d Cir. 1992).

"To determine whether absolute immunity attaches, a court must consider 1) whether the process at issue shares 'characteristics of the judicial process,' and 2) whether the individuals in question were functioning in a prosecutorial capacity."  *Dupont v. N.J. State Police*, No. 08 Civ. 10220, 2009 WL 2486052, at *5 (S.D.N.Y. Aug. 14, 2009) (quoting *DiBlasio v. Novello*, 344 F.3d 292, 297–98 (2d Cir. 2003)).  Once a court determines that the "challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused."  *Bernard v. County of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004).  The decision to initiate a proceeding against a defendant is a "quintessential prosecutorial function[]" that entitles the prosecutor to absolute immunity "unless [he or she] proceeds in the clear absence of all jurisdiction."  *Shmueli*, 424 F.3d at 237 (internal citations omitted).  In determining whether a given prosecution was "clearly beyond the scope of that jurisdiction" or whether "instead there was at least a colorable claim of authority," the court is to look to the pertinent statutes that "may have authorized prosecution for the charged conduct."  *Id.*  "Once the court determines that the challenged prosecution was not clearly beyond the prosecutor's jurisdiction, the prosecutor is shielded from liability for damages for commencing and pursuing the prosecution, regardless of any allegations that his actions were undertaken with an improper state of mind or improper motive."  *Id.*

The City Defendants argue that Defendants Quhshi, Gluck and Taussig are entitled to absolute immunity because the initiation of the nuisance abatement proceedings falls within the scope of prosecutorial immunity.  (City Def. Summ. J. Mem. 4.)  Initiation of a nuisance abatement proceeding is a quasi-prosecutorial function.  *Pinter v. City of New York*, 710 F. Supp.

2d 408, 419–20 (S.D.N.Y. 2010), *rev'd on other grounds by* 448 Fed. App'x 99 (2d. Cir. 2011). The New York City Administrative Code §§ 7-704 and 7-706 authorize the corporation counsel to bring and maintain a civil proceeding in the name of the City in order to enjoin a public nuisance. (City Def. 56.1 ¶ 18.) Corporation counsel is permitted to appoint such assistant corporation counsels "as may be necessary and assign them powers and duties through a written delegation." *Id.* at ¶ 20. Corporation counsel "has delegated authority to initiate some nuisance abatement proceeding to the Chief Legal Officer of CEU." *Id.* at ¶ 21 (citing Declaration of Gabriel Taussig ("Taussig Decl.") at ¶ 9 ("I am aware that the authority to initiate nuisance abatement proceedings has been partially delegated to the Chief Legal Officer of Midtown Enforcement . . . and the Chief Legal Officer of the New York City Police Department's Civil Enforcement Unit ('CEU'). Under this delegation, these agencies are permitted to initiate and prosecute such proceedings once prior approval is obtained for Chief of the Administrative Law Division.")).

Plaintiffs do not challenge that the initiation of a nuisance abatement proceeding is a prosecutorial function.[5] Rather, they argue that Defendant Gluck inserted false evidence into the

---

[5] Plaintiffs do, however, argue that the City Defendants coordinated with the SLA to initiate a SLA proceeding and such conduct falls outside of the scope of their prosecutorial function. (Pl. Opp'n 27) ("There is a material issue of fact whether Gluck, on behalf of municipal defendants, met with officials of the New York State Liquor Authority to assist in their investigation of identical claims against plaintiffs."). Plaintiffs rely on the deposition testimony of Gluck in support of this claim. (Pl. Opp'n 9–10.) At his deposition, Gluck testified that on various occasions during the nuisance abatement proceeding he met with Buckley, Jones and a supervisor from the SLA. (Pl. Aff. Ex. 17 ("Gluck Dep.") 42–46.) Gluck also testified that he exchanged e-mails with individuals from the SLA after Justice Velasquez issued his decision. *Id.* at 44. Gluck could not recall whether he had any communications with members of the SLA prior to the nuisance abatement proceeding, although he testified that "[i]t's possible I sent them copies of legal papers that were eventually filed." *Id.* at 44–45. All of the "meetings" between Gluck and the SLA occurred at the state court during the nuisance abatement proceeding. These interactions, which occurred during the abatement proceeding and after the SLA proceeding had been filed, do not support an inference that the City Defendants had an

affidavits and, therefore, his conduct no longer falls within the scope of a prosecutorial function. (Pl. Opp'n 27.) Plaintiffs do not dispute that each of the police officers signed the affidavits in question. (Tr. 70.) Nevertheless, Plaintiffs contend that because the police officers did not sign the affidavits in Defendant Gluck's presence, contrary to the affidavits which state they were sworn to before Gluck, and their testimony at trial was inconsistent with the affidavits, "[t]he only conclusion that can be drawn . . . is that evidence was inserted into those affidavits that did not really exist." (Pl. Opp'n 26.) Plaintiffs' argument is mere speculation and is not supported by the evidence. Justice Velasquez only identified three officers whose testimony contradicted the information contained in the affidavits, and he does not cite a single instance where the affidavit contained more detail than the police officer's testimony. (Wotorson Aff. Ex. 15 at 14, 22, 27.) Instead, Justice Velasquez's decisions emphasized the City's absence of evidence—i.e., affidavits lacking the requisite detail and the absence of supporting documentation and properly authenticated reports. *See e.g., id.* at 15, 17–18, 20. Justice Velasquez's decision, which chastises the City for the absence of credible evidence, undermines rather than supports Plaintiffs' claim that Defendant Gluck manufactured evidence.

In any event, any misconduct on Defendant Gluck's part in initiating the abatement proceeding is protected by absolute immunity. A prosecutor is entitled to absolute immunity, even if the prosecution was initiated without probable cause, with falsified evidence or with an

---

investigatory role in initiating the SLA proceeding. The SLA was a named defendant in the nuisance abatement action and the body responsible for the issuance and revocation of liquor licenses. Temptations Tavern was being charged with various violations of the ABC Law. As counsel for Defendant Jones stated at oral argument, the nuisance action, which addresses whether an establishment is a nuisance to the community and can remain open, and the SLA proceeding, which addresses the issuance of a liquor license and the fitness of an establishment to carry that liquor license, are inherently related to each other. (Tr. 83.) The minimal interactions between Gluck and the SLA cannot support an inference that the City Defendants initiated the SLA proceeding and, therefore, were acting outside of the scope of their prosecutorial function.

9

improper motive, so long as the challenged act was a prosecutorial function. *Bernard*, 356 F.3d at 503, 505; *see also Shmueli*, 424 F.3d at 237 ("A prosecutor is . . . entitled to absolute immunity despite allegations of his 'knowing use of perjured testimony' and the 'deliberate withholding of exculpatory information.' Although such conduct would be 'reprehensible,' it does not make the prosecutor amenable to a civil suit for damages." (quoting *Imbler*, 424 U.S. at 431 n.34)). In drafting and reviewing the nuisance abatement filings, Defendants Gluck, Quhshi and Taussig were acting within the scope of their prosecutorial function. *Pinter*, 710 F. Supp. 2d at 419–20. Defendant Gluck's failure to notarize the affidavits in the presence of the police officers does not transform his conduct into an investigatory function. Accordingly, Defendants Gluck, Taussig and Quhshi are entitled to absolute immunity.[6]

### c. First Amendment Retaliation

Plaintiffs cannot sustain a retaliation claim. In order to state a retaliation claim, a plaintiff must show: "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Kuck v. Danaher*, 600 F.3d 159, 168 (2d Cir. 2010). Plaintiffs allege that Defendants retaliated against them for filing the 2008 federal lawsuit in violation of their rights under the First Amendment. (Am. Compl. ¶ 17.) Defendants concede that the filing of the 2008 federal lawsuit is an interest protected by the First Amendment but argue that Plaintiffs cannot establish a causal connection between

---

[6] Plaintiffs argue that even if their claims for monetary relief are dismissed, their remaining claims for injunctive and declaratory relief can proceed. (Pl. Opp'n 29.) Plaintiffs state in the Amended Complaint that they are seeking permanent injunctive relief as well as "such other and further relief as this Court may deem just and proper." (Am. Compl. ¶¶ VI (a), (e).) The Court need not address the viability of Plaintiffs' claims for injunctive relief because Plaintiffs' claims are dismissed on the merits.

10

Plaintiffs' 2008 federal lawsuit and the 2011 nuisance abatement proceeding. (City Def. Summ. J. Mem. 13.)

Plaintiffs repeatedly argue that the 2011 nuisance abatement action was suspiciously timed and that retaliatory animus can be inferred from the temporal proximity of the ongoing 2008 federal lawsuit and the 2011 nuisance abatement action.[7] (Pl. Opp'n 11; Tr. 85.) The Second Circuit has held that "a plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time" by the defendant's adverse action. *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001) (internal citations, quotations and alterations omitted). However, where a plaintiff has repeatedly and continuously engaged in protected activity, the plaintiff must demonstrate a "nexus between a specific grievance and a specific adverse action" in order to find that proximity establishes causation. *Edwards v. Horn*, No. 10 Civ. 6194, 2012 WL 760172, at *17 (S.D.N.Y. Mar. 8, 2012); *see also Woodworth v. Shinseki*, 447 Fed. App'x 255, 256–57 (2d Cir. 2011) (finding no evidence of causation where the filing of a federal lawsuit was fifteen months before the adverse action, despite the fact that the lawsuit was still pending when the adverse action occurred); *Andino v. Fischer*, 698 F. Supp. 2d 362, 385 (S.D.N.Y. 2010) (finding that the temporal proximity was a result of the "large number of complaints in a short period of time" and did not establish a nexus).

Here, Plaintiffs cite to the February 16, 2011 deposition of Erica Donlon, a defendant in the 2008 federal lawsuit, in an attempt to establish an activity in the 2008 federal lawsuit that is

---

[7] Plaintiffs also allege that retaliatory animus can be inferred from Defendant Taussig's involvement as a supervisor in both the 2008 federal lawsuit and the 2011 nuisance abatement proceedings. (Tr. 51–52.) The Court finds no basis for such an inference in light of Defendant Taussig's role at the New York City Law Department as Chief of the Administrative Law Division. (City Def. 56.1 ¶¶ 13–14.)

temporally proximate to the filing of the nuisance abatement proceeding. (Pl. Opp'n 4.) Plaintiffs argue that Donlon "could neither confirm nor deny in her deposition, that her prior affidavit, police paper work and testimony at a prior State Liquor Authority hearing regarding Temptations Tavern were materially false," and, "[s]hortly thereafter, on March 17, 2011, defendants, City of New York, filed a quasi-criminal Nuisance Abatement action against plaintiffs." *Id.* In support of their argument, Plaintiffs provided the Court with two pages of Donlon's deposition, during which she is asked about a summons she issued Temptations Tavern for serving alcohol after hours. (Wotorson Aff. Ex. 6 ("Donlon Dep.").) In the deposition, Donlon testified that her superior officer directed her to fill out the summons but she did not remember whether or not her superior officer instructed her to write on the summons 4:35 a.m. instead of 4:33 a.m., the actual time the summons was issued. (Donlon Dep. 27:2–20.) Nothing in this testimony supports an inference of retaliation. Plaintiffs cannot simply choose a recent activity in the 2008 federal lawsuit in order to establish temporal proximity. Plaintiffs have failed to offer any evidence or alleged any facts to support a causal connection between the 2008 federal lawsuit and the 2011 nuisance abatement action.[8] Accordingly, Plaintiffs' retaliation claim is dismissed.

---

[8] Furthermore, as the Second Circuit has recognized, where timing is the only basis for a claim of retaliation and "gradual adverse" actions began "well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 94 (2d Cir. 2001); *see also Nicastro v. N.Y.C. Dep't of Design and Const.*, 125 Fed. App'x 357, 358 (2d Cir. 2005) (finding the plaintiff had failed to establish a prima facie case of retaliation under Title VII because the adverse employment actions had begun long before the plaintiff engaged in protected activity). The City first filed a nuisance abatement proceeding against Temptations Tavern in May of 2005, and then filed three more nuisance abatement proceedings before filing the 2011 proceeding at issue. (City Def. 56.1 ¶¶ 29–36.) In February 2008, prior to the filing of the 2008 federal lawsuit, Temptations Tavern entered into a stipulation to resolve the most recent nuisance abatement proceeding whereby it agreed not to violate any ABC Law and that it would be subject to immediate closure based on any violation of the stipulation. *Id.* at ¶ 36. In December 2008, Justice Miller of the Supreme

### d. Malicious Prosecution

Plaintiffs cannot sustain a claim for malicious prosecution. To succeed on a claim for malicious prosecution, the plaintiff must show that (1) a prosecution was initiated against him or her, (2) it was brought with malice but without probable cause to believe that it could succeed and (3) the prosecution terminated in favor of the accused. *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003). In addition, because a malicious prosecution claim is premised on a violation of the individual's Fourth Amendment rights, the plaintiff must show "some deprivation of liberty consistent with the concept of 'seizure.'" *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995). Defendants argue that Plaintiffs' malicious prosecution claim must be dismissed because Plaintiffs cannot demonstrate that the nuisance abatement proceeding terminated in their favor or a deprivation of liberty.

When the City Defendants filed the 2011 nuisance abatement proceeding, they requested a preliminary injunction closing Temptations Tavern pending the resolution of the underlying nuisance abatement action. (Wotorson Aff. Ex. 7.) A hearing was held on their request for a preliminary injunction, and Justice Velasquez denied that motion but fined Temptations Tavern $2,000 for a violation of the ABC Law. (Wotorson Aff. Ex. 10 at 8.) Justice Velasquez did not dismiss the underlying action, but there has not been any activity in the litigation since Justice Velasquez's June 15, 2011 decision denying the preliminary injunction. (City Def. 56.1 ¶ 45; Wotorson Aff. Ex. 15 at 39–40.) Plaintiffs concede that they have not moved to dismiss the action or moved for summary judgment. (Tr. 43.) Plaintiffs argue, however, that based on a

---

Court, Kings County found Temptations Tavern had violated the stipulation and ordered that it be closed for 90 days. *Id.* at 38. Thus, the adverse actions began prior to the filing of the lawsuit and gradually became more severe, resulting in the temporary closure of Temptations Tavern in 2008.

close reading of Justice Velasquez's decision and the City's appeal of that decision, the Court should find that the nuisance abatement proceeding terminated in Plaintiffs' favor. *Id.* at 43–44.

Courts have repeatedly found that where the underlying litigation is ongoing, the litigation has not terminated in the plaintiff's favor for the purposes of a malicious prosecution claim. *See e.g.*, *Chord Assoc., LLC v. Protech 2003-D, LLC*, No. 07 Civ. 5138, 2010 WL 3780380, at *5 (E.D.N.Y. Sept. 21, 2010) ("Because this action is still ongoing, it has not terminated in [Plaintiff's] favor, and any malicious prosecution claim would fail as a matter of law."); *First Indemnity of Am. Ins. Co. v. Shinas*, No. 03 Civ. 6634, 2009 WL 3154282, at *12 (S.D.N.Y. Sept. 30, 2009) (dismissing counterclaim for malicious prosecution based on the current lawsuit, as it was ongoing, and had not terminated in the defendant's favor); *Singleton v. New York*, No. 98 Civ. 414, 1998 WL 438530, at *2 (S.D.N.Y. Jul. 31, 1998) ("Because plaintiff has not alleged that the state court proceedings have terminated in his favor—indeed, they appear to be ongoing—his false arrest, false imprisonment and malicious prosecution claims must be dismissed.").

Plaintiffs have not supplied any legal support for their argument that this Court should find an ongoing litigation effectively closed, despite the undisputed fact that the action is still pending. In any event, Justice Velasquez's decision denied the request for a preliminary injunction but did not dismiss the case. (Wotorson Aff. Ex. 15 at 39.) If, as Plaintiffs claim, Justice Velasquez effectively ruled on the nuisance abatement action in its entirety, Plaintiffs could have and should have moved to dismiss the action.[9] Plaintiffs did not make such a motion,

---

[9] Plaintiffs argue that they did not believe that they needed to move to dismiss because the City Defendants appeal made clear that the underlying action had terminated. (Tr. 43.) However, the Notice of Appeal clearly states that the City is seeking an appeal of Justice Velasquez's decision regarding the City's application to close Temptations Tavern "for up to a

and the nuisance abatement action is ongoing. *See Carpenter v. Fleet/Norstar Bank*, 91 Civ. 6330, 1992 WL 349771, at *3 (S.D.N.Y. Nov. 10, 1992) (dismissing the plaintiff's malicious prosecution claim, where the plaintiff argued that "'[t]he judge in this law suit, [*sic*] passed on the merits that show my non-liability,' . . . and that the fact that Norstar Bank has not been active in her state case for nearly four years is tantamount to voluntary discontinuance which is tantamount to a favorable termination.'" (alterations in original)). Plaintiffs' malicious prosecution claim fails as a matter of law.[10]

### e. Abuse of Process

Plaintiffs' claim of abuse of process must be dismissed. Section 1983 liability may not be predicated on a claim of malicious abuse of civil process. *Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009); *Cook v. Sheldon*, 41 F.3d 73, 79–80 (2d Cir. 1994). In order to establish a claim for abuse of process, a plaintiff must show that the defendant "(1) employs regularly issued

---

year *pending resolution of the underlying nuisance abatement lawsuit.*" (Wotorson Aff. Ex. 21 (emphasis added)).

[10] Additionally, with regard to Defendant Jones, Plaintiffs have failed to allege any facts that could support a claim for retaliation or malicious prosecution. Plaintiffs allege that Defendant Jones conspired with the City Defendants to violate Plaintiffs' constitutional rights. (Am. Compl. ¶¶ 21, 23, 25.) The only factual allegations in the Amended Complaint regarding Defendant Jones' alleged participation in the conspiracy are that Gluck "had 'communications' with Mike Jones and Robert Buckley, lawyers at the New York State Liquor Authority." (Am. Compl. ¶10(o).) In addition, Plaintiffs allege that Defendant Jones "attended one or more sessions of the Nuisance Abatement case and knew or had good reason to know that the case against plaintiffs was extraordinarily weak, and that is it [*sic*] based upon utterly false affidavits which were not properly sworn to. . . . Still, MIKE JONES coordinated with the New York City Police Department and approved the continuation of the administrative case against plaintiffs as an accommodation to the New York City Police Department, and the City of New York, who sought to muzzle plaintiffs because of their prior Section 1983 lawsuit." (Am. Compl. ¶¶ 7–8.) Plaintiffs have failed to allege any facts, aside from meetings that took place at the courthouse during the nuisance abatement proceeding, in order to support their claim of a conspiracy. Plaintiffs have failed to allege any facts in the Amended Complaint that could support a claim against Defendant Jones.

legal process to compel performance or forbearance of some act (2) with intent to do harm without justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003).

Plaintiffs argue that the nuisance abatement and SLA proceedings are "quasi-criminal" and therefore their abuse of process claim is not barred. (Pl. Suppl. Opp'n 3 ("There now can be little doubt that nuisance abatement proceedings and SLA proceedings based upon statutes that give the City or the State a right to seek to permanently close establishments and/or curtail permission for them to sale [*sic*] alcoholic beverages due to health and quality of life concerns, are quasi-criminal in nature.").) However, Plaintiffs do not provide any legal support for this contention, and, in fact, Plaintiffs' counsel is well aware that the law is to the contrary.[11] In *Prasad v. City of New York*, 370 Fed. App'x 163 (2d Cir. 2010), a nightclub — represented by Plaintiffs' counsel — brought an abuse of process claim against its neighbors, among others, for bringing a nuisance abatement action against it. The district court dismissed the claim because an abuse of process claim could only be based upon "an alleged abuse of criminal process." *Prasad v. City of New York*, 08 Civ. 3818, 2009 WL 1119412, at *3 (S.D.N.Y. Apr. 24, 2009). The Second Circuit affirmed, holding that "Appellants' claim that they were subjected to malicious abuse of process must also fail. '[S]ection 1983 liability . . . may not be predicated on

---

[11] At oral argument, Plaintiffs requested leave to provide supplemental briefing regarding their claim that the nuisance abatement and SLA proceedings are "quasi-criminal" in nature. The Court granted Plaintiffs' request, and Plaintiffs were to file any supplemental briefing by August 1, 2012. (Tr. 92–93.) On August 27, 2012, Plaintiffs submitted their supplemental briefing. (Pl. Suppl. Opp'n.) Despite the extra weeks, Plaintiffs failed to provide any cases that supported their claim that the nuisance abatement and SLA proceedings are quasi-criminal in nature. *Id.* at 2–3. In fact, one of the cases cited by Plaintiffs, *Padberg v. McGrath-McKechnie*, 203 F. Supp. 2d 261 (E.D.N.Y. 2002), holds that a statute governing the suspension and revocation policy for taxicab licenses should be reviewed under "the deferential standard used to assess statutes that impose *civil* penalties." 203 F. Supp. 2d at 286–87 (emphasis added).

a claim of malicious abuse of . . . civil process.'" *Prasad*, 370 Fed. App'x at 165 (quoting *Green*, 585 F.3d at 104 (alterations in original)). In the instant case, Plaintiffs' malicious abuse of process claim is based on the nuisance abatement and SLA proceedings. As both proceedings are civil, Plaintiffs' claim for malicious abuse of process must be dismissed.[12]

   f. **Remaining Claims**

Having found that Plaintiffs did not establish a constitutional violation, the Court finds that Plaintiffs' *Monell* claim and Section 1985 conspiracy claim fail as a matter of law. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."); *Cohen v. County of Nassau*, 10 Civ. 5836, 2011 WL 1630136, at *7 (E.D.N.Y. Apr. 27, 2011) ("As plaintiff has not adequately pleaded a constitutional violation necessary to Section 1983 liability, his Section 1985 claim for the same conduct consequently fails.").

Finally, Plaintiffs request that the Court grant them leave to amend, if the Court finds the Amended Complaint legally insufficient. (Pl. Opp'n 36.) Under Rule 15 of the Federal Rules of

---

[12] Even if Plaintiffs had established that the nuisance abatement and SLA proceedings are quasi-criminal, Plaintiffs' abuse of process claim would still fail. Plaintiffs have not established that Defendants used the nuisance abatement or SLA proceedings with "intent to do harm." *Savino*, 331 F.3d at 76. For the reasons previously discussed in the context of Plaintiffs' retaliation claim, the Court finds that Plaintiffs have failed to offer any evidence from which retaliatory animus could be inferred. Nor have Plaintiffs offered any other allegations or presented any other evidence from which an intent to harm could be inferred. Although Plaintiffs repeatedly reference their allegations in the 2008 federal lawsuit that Black and Caribbean-owned establishments were being targeted and harassed, there are no allegations in this Amended Complaint that the City Defendants or Defendant Jones acted with racial animus. Rather, Plaintiffs specifically allege that Defendants filed the nuisance abatement proceeding in order "to muzzle plaintiffs because [the 2008 federal lawsuit] addressed matters of public concern." (Am. Compl. ¶ 17.)

Civil Procedure, the court "should freely give leave when justice so requires." Fed. R. Civ. P. 15 (a)(2). "Generally, a district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). Based on the information before the Court and the arguments advanced by Plaintiffs at oral argument and in their papers, the Court finds that any amendment would be futile. Moreover, the delay in seeking to amend is inexcusable given Plaintiffs' prior opportunity to amend and the prejudice and burden to Defendants. *See Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008).

### III. Conclusion

For the foregoing reasons, the Court grants the City Defendants' motion for summary judgment and Defendant Jones' motion to dismiss. The Clerk of Court is directed to close this case.

SO ORDERED:

_____s/MKB_____
MARGO K. BRODIE
United States District Judge

Dated: September 25, 2012
       Brooklyn, New York